UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JANINA LAGUERRE,

                        Plaintiff,

            -against-

NATIONAL GRID USA,

                        Defendant.

--------------------------------------------------------X

                                    **REPORT AND
RECOMMENDATION**
21 CV 881 (LDH) (CLP)

**POLLAK**, United States Magistrate Judge:

On December 26, 2020, plaintiff Janina Laguerre commenced this action against

defendant National Grid USA in the Supreme Court of the State of New York, Kings County.

(See Compl.[1]).  The Complaint contains two causes of action:  the First Cause of Action alleges

a violation of the New York State Human Rights Law ("NYSHRL"), and the Second Cause of

Action alleges a violation of the New York City Human Rights Law ("NYCHRL"), both based

on defendant's alleged failure to accommodate plaintiff's disability.  (Compl. ¶¶ 1, 38-39).

On February 18, 2021, defendant removed the case to this Court, alleging federal

question jurisdiction pursuant to the preemptive effect of Section 301 of the Labor Management

Relations Act, 29 U.S.C. § 185 ("Section 301").  (Def.'s Not.[2] at 4).  On February 19, 2021,

plaintiff filed a motion to remand the case to state court.  (Pl.'s Mot.[3]).  The Honorable LaShann

DeArcy Hall referred the motion to remand to the undersigned for a Report and

Recommendation.

---

[1] Citations to "Compl." refer to the Complaint, attached as Exhibit 1 to the Notice of Removal,
filed February 18, 2021, ECF No. 1-2.
[2] Citations to "Def.'s Not." refer to defendant's Notice of Removal, filed February 18, 2021, ECF
No. 1.
[3] Citations to "Pl.'s Mot." refer to plaintiff's Memorandum of Law in Support of Motion to
Remand, filed February 19, 2021, ECF No. 9.

For the reasons set forth below, the Court respectfully recommends that plaintiff's motion be granted, and the case remanded to state court.

FACTUAL AND PROCEDURAL BACKGROUND

The Complaint alleges that defendant National Grid USA ("National Grid") is a gas utility that serves residents and businesses throughout the Northeast and is an "employer" as defined by the NYSHRL and NYCHRL. (Compl. ¶ 3). Plaintiff alleges that she has been employed by the defendant since 1993, first as a Meter Reader, and then, beginning in 1996, as a Customer Service Representative ("CSR") in National Grid's Call Center at One MetroTech. (Compl. ¶ 4). In this capacity, she belongs to the Transport Workers of America, Local 101 (the "Union"), which has a collective bargaining agreement ("the CBA") with defendant. (Id. ¶¶ 12, 18).

Plaintiff alleges that when she first started working at One MetroTech, she took inbound calls. (Id. ¶ 4). This continued until 2002, when she was transferred to the Special Services Team, where she handled new accounts, set up appointments to check billing complaints, and took a few residential calls. (Id.) She was diagnosed with lupus in 1996. (Id.) In 2008, she was "rotated out" to the inbound call unit and became so ill that she was out of work until 2014. (Id.)

In 2014, plaintiff asked to come back to work with some accommodation and requested a transfer to a "less stressful job." (Id. ¶ 5). This request was denied, so she returned to work in 2015, doing inbound calls. (Id.) When her condition worsened in December 2015, she made a second request, on the advice of her physician, for work in "a less stressful environment" because "stress plays a big role in flare of lupus and fibromyalgia." (Id. ¶ 6). Plaintiff claims that there was no meeting to discuss her request. (Id.) The only meeting she had with

2

defendants was unrelated to her condition; she and another employee requested a transfer to the Special Services team based on seniority.  (Id.)

In 2016, plaintiff experienced multiple flare-ups of her illness, causing her to miss more time from work.  (Id. ¶ 7).  On June 2, 2016, plaintiff submitted a doctor's note to defendant stating that she "may go back to work on 6/4/16 (needs accommodation, etc., if possible)."  (Id.)  Plaintiff alleges that, again, no accommodation or inquiry was forthcoming.  (Id.)  At this time, because plaintiff was aware of "at least 20" CSRs who worked from home, she filed a charge with the Equal Employment Opportunity Commission ("EEOC"), claiming a violation of the Americans With Disabilities Act ("ADA").  (Id.)

After going out of work again in October 2016, plaintiff claims that she submitted a new doctor's note on January 5, 2017, specifically requesting a "work at home" accommodation.  (Id. ¶ 8).  Plaintiff was interviewed by a nurse employed by the defendant regarding this request, and was granted additional leave, but no action was taken regarding her request to work from home. (Id. ¶ 9).  A further request for assistance sent directly to the defendant's President in October 2017 met with no response.  (Id. ¶ 10).

Plaintiff alleges that at no time before January 2017 has any National Grid official engaged in any interactive discussion with plaintiff about "what CSR work she could or could not do."  (Id. ¶ 11).  Even after filing a federal lawsuit in 2017, plaintiff alleges that no one from defendant – except the National Grid counsel during her deposition – has ever engaged in an interactive discussion with her.  (Id.)  Nor has defendant made any effort to accommodate her disability until May 2020, when the company assigned all Call Center employees to work from home due to the COVID-19 pandemic.  (Id. ¶¶ 28-29).

The Complaint identifies four categories of accommodation that plaintiff maintains

defendant could have afforded her.  Specifically, plaintiff alleges that she could have been either assigned the duties of a different type of CSR on a part-time or full-time basis or been reassigned to a clerical job within the CSR titles.  (Id. ¶¶ 13, 15-17, 24, 25, 27).  Additionally, she alleges that she could have been allowed to work from home.  (Id. ¶¶ 17, 23).  Finally, she alleges that she could have been transferred to a job closer to where she lives in Parlin, New Jersey;  she claims that even though such a transfer would have been outside the bargaining unit that was based in Staten Island, the Union "would not have objected to a transfer."  (Id. ¶¶ 26-27).  She also alleges that none of these accommodations would violate the collective bargaining agreement ("the CBA") that the Union had negotiated with defendant.  (Id. ¶¶ 19-21, 28).

Regarding the potential for a transfer, plaintiff alleges that there are five subsets of CSRs in the Call Center and that all CSRs can perform any one of those jobs.  (Id. ¶ 13).  According to the Complaint, all CSRs begin by doing inbound call work, but they can move to another group by either applying for a job or opting to transfer when the Union canvasses for interested people. (Id. ¶ 18).  Plaintiff claims that the CBA does not require strict seniority in transfers.  (Id.) Plaintiff further alleges that the CBA gives "disabled employees many rights so that seniority is not an impediment to accommodating employees with disabilities."  (Id. ¶ 19).

In the Complaint, she quotes Article XVIII Section 1 of the CBA, which provides that if an employee becomes disabled, "the Company will attempt but shall not be required to provide the employee with work."  (Id.)  The provision also sets certain parameters prohibiting the employer from reducing an employee's compensation based on a disability, and it further provides that "the Company will not confine itself to employment opportunities in a particular area, but will seek to find a place for the employee throughout the Company."  (Id.)  Plaintiff alleges that this provision demonstrates that, had she been accommodated by placement in a

4

lower paying job, she would not suffer a loss because she had the requisite seniority, and additionally, the Company would not have been limited in its job search.  (Id.)  Plaintiff alleges that at no time did defendant perform a search for another less stressful position for her, nor did it ask the Union to consent to moving plaintiff to a position where she might have less seniority.  (Id. ¶¶ 19, 22).

Regarding her work from home request, she alleges that beginning in 2010, 13 CSRs began working from home in the Accounts Management Operations ("AMO"), which focuses on billing, corrective matters, and account updates.  (Id. ¶¶ 15-17).  Plaintiff also claims that there was no reason why calls could not have been routed to her home nor anything preventing defendant from placing her in another position that she could have performed from home.  (Id. ¶¶ 23-25).  Plaintiff cites, as an example, another employee who was allegedly involved in criminal activity and, although cleared of all wrongdoing, defendant found her a clerical job that paid more than plaintiff was making, demonstrating that "[w]hen it wants to, NG can find or create jobs openings."  (Id. ¶ 24).

Plaintiff alleges that after she filed her EEOC charge in 2016, defendant failed to communicate with her or respond to her requests for an accommodation.  (Id. ¶¶ 7, 29).  Subsequently, she filed a federal action in this Court ("the prior action") under the ADA, which was dismissed on October 23, 2020, based on the court's finding that plaintiff was not a "qualified employee" under the ADA and because, under the ADA, defendant had no obligation to engage in an interactive process with her.  (Id. ¶ 30); see Laguerre v. National Grid USA, No. 17 CV 6724 (E.D.N.Y. Dec. 23, 2020).  Her pendent NYSHRL and NYCHRL claims in that action were also dismissed without prejudice and she re-filed those claims in New York State Supreme Court in Kings County on December 26, 2020.  (See Compl.).  Defendant then

removed those claims to this Court.  (See Def.'s Not.).


## DISCUSSION

### I.    Legal Standard

#### A.  Removal

On a motion to remand, "the defendant bears the burden of demonstrating the propriety of removal."  California Pub. Emps.' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004) (citation omitted); see also Hodges v. Demchuk, 866 F. Supp. 730, 732 (S.D.N.Y. 1994) (citing R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 655 (2d Cir. 1979)).  A defendant may remove a state court action to federal court if the plaintiff could have originally filed suit in federal court, based on either diversity or federal question jurisdiction.  See 28 U.S.C. § 1441(a).  "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  "Thus, a plaintiff may avoid federal jurisdiction by pleading only state law claims, even where federal claims are also available, and even if there is a federal defense."  Fax Telecommunicaciones Inc. v. AT&T, 138 F.3d 479, 486 (2d Cir. 1998).  Furthermore, "in light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."  Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013) (citation omitted).

However, there is an exception to the general rule that the plaintiff is "master of the claim."  Caterpillar Inc. v. Williams, 482 U.S. at 392.  "[A] plaintiff cannot avoid removal by

artful pleading, i.e., by framing in terms of state law a complaint the real nature of which is

federal, regardless of plaintiff's characterization . . . , or by omitting to plead necessary federal

questions in a complaint."  Derrico v. Sheehan Emergency Hosp., 844 F.2d 22, 27-28 (2d Cir.

1988) (internal citations and quotation marks omitted).  "The artful-pleading doctrine includes

within it the doctrine of complete preemption."  Sullivan v. American Airlines, Inc., 424 F.3d

267, 272 (2d Cir. 2005).  Under the "complete preemption" doctrine, when "federal common law

or statutory law so utterly dominates a preempted field that all claims within that field

necessarily arise under federal law," a complaint that purportedly raises only state law claims

will be deemed as actually raising federal claims.  Marcus v. AT&T Corp., 138 F.3d 46, 53 (2d

Cir. 1998).  Thus, if a plaintiff "raises . . . a completely preempted state-law claim in his

complaint, a court is obligated to construe the complaint as raising a federal claim and therefore

'arising under' federal law."  Sullivan v. American Airlines, Inc., 424 F.3d at 272.

  B. Section 301 Preemption

  Defendant seeks to remove this action based on Section 301 of the Labor Management

Relations Act ("LMRA"), 29 U.S.C. § 185(a).  (Def.'s Not. at 3).  Section 301 provides in

relevant part:

> Suits for violations of contracts between an employer and a labor
> organization representing employees in an industry affecting
> commerce as defined in this chapter, . . . may be brought in any
> district court of the United States having jurisdiction of the parties,
> without respect to the amount in controversy or without regard to
> the citizenship of the parties.

29 U.S.C. § 185(a).  This provision of the LMRA is the "statute most commonly associated with

the complete preemption doctrine."  Brown v. National Football League, 219 F. Supp. 2d 372,

378 (S.D.N.Y. 2002).  Thus, because Section 301 authorizes federal courts "'to fashion a body of

federal law for the enforcement of . . . collective bargaining agreements,'"  Wilds v. United

Parcel Serv., Inc., 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) (quoting United Steelworkers of Am., AFL-CIO-CLC v. Rawson, 495 U.S. 362, 368 (1990)), federal courts are given exclusive jurisdiction over controversies which require the interpretation and application of collective bargaining agreements.  See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988); United Steelworkers of Am., AFL-CIO-CLC v. Rawson, 495 U.S. at 368.  Accordingly, the Supreme Court has found that Section 301 has "the requisite extraordinary preemptive force to support complete preemption" and therefore claims necessitating the interpretation of a collective bargaining agreement must be litigated in federal court.  See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. at 413.  This includes claims that are "founded directly on rights created by collective-bargaining agreements, and also claims [that are] substantially dependent on analysis of a collective-bargaining agreement."  Caterpillar Inc. v. Williams, 482 U.S. at 394; see also Foy v. Pratt & Whitney Grp., 127 F.3d 229, 232 (2d Cir. 1997) (holding that the question is whether "'the resolution of a state-law claim depends on an interpretation of the collective-bargaining agreement'" (quoting Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 260-62 (1994))).

However, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."  Livadas v. Bradshaw, 512 U.S. 107, 124 (1994).  Even if the state law claim and a dispute under a collective bargaining agreement "would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes."  Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. at 409-10.  Moreover, Section 301 "cannot be read broadly to pre-empt

nonnegotiable rights conferred on individual employees as a matter of state law." Livadas v. Bradshaw, 512 U.S. at 123.

In the instant case, defendant asserts that, because plaintiff's claim necessitates interpretation of specific provisions of the CBA, the claim must be adjudicated in federal court. (Def.'s Not. at 3-4). To determine whether a claim requires interpretation or analysis of a collective bargaining agreement, the Court must look to the "legal character of [the] claim." Livadas v. Bradshaw, 512 U.S. at 123.

## II.    Analysis

### A.    Waiver of Removal Jurisdiction

In opposing removal, plaintiff asserts that, by failing to raise the argument in the prior action before this court, defendant has waived any argument that plaintiff's claims are preempted by Section 301. (Pl.'s Reply[4] at 3-4). Although plaintiff raises this waiver argument for the first time in her Reply Memorandum, the Court must, as a threshold matter, evaluate whether defendant may avail itself of this Court's jurisdiction, or whether removal jurisdiction has been waived.

Defendant disputes that its actions in a previously dismissed case can waive removal jurisdiction in the instant case. (Def.'s Sur-Reply[5] at 2). Defendant further contends that "[p]laintiff's claims in the prior case bear little resemblance to the state-law claims pled by her in this case," noting that in the prior action, she "did not even make reference to the CBA." (Id. at 2-3).

---

[4] Citations to "Pl.'s Reply" refer to plaintiff's Reply Memorandum of Law in Support of the Motion to Remand (docketed as a Response in Opposition to the Motion to Remand), filed March 26, 2021, ECF No. 15.

[5] Citations to "Def.'s Sur-Reply" refer to defendant's Sur-Reply Memorandum in Further Opposition to Plaintiff's Motion to Remand, filed April 13, 2021, ECF No. 18.

A defendant may waive removal by taking "affirmative steps in state court that are inconsistent with removal." Stemmle v. Interlake Steamship Co., 198 F. Supp. 3d 149, 165 (E.D.N.Y. 2016). Indeed, courts that have found removal jurisdiction to be waived have focused almost entirely on the actions in state court of the party seeking removal. See id. at 166. At the same time, "any waiver of the right of removal must be clear and unequivocal." Hanwha Corp. v. Cedar Petrochemicals, Inc., No. 09 CV 10559, 2010 WL 11713072, at *2 (S.D.N.Y. Apr. 21, 2010) (quoting JP Morgan Chase Bank, N.A. v. Reijtenbagh, 611 F. Supp. 2d 389, 390 (S.D.N.Y. 2009)). Where the defendant took a "substantial offensive or defensive action" in state court, such as filing a dispositive motion or a permissive counterclaim, the federal courts are more likely to find the intent to waive to be "clear and unequivocal." MG Building Materials, Ltd. v. Paychex, Inc., 841 F. Supp. 2d 740, 752 (W.D.N.Y. 2012) (quoting Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP, 365 F.3d 1244, 1246 (11th Cir. 2004)). In Heafitz v. Interfirst Bank of Dallas, the court held that by filing a motion to dismiss in state court, the defendant "voluntarily stepped into state court . . . and took affirmative action to submit issues for determination by the state court." 711 F. Supp. 92, 96 (S.D.N.Y. 1989); see also Harris v. Brooklyn Dressing Corp., 560 F. Supp. 940, 942 (S.D.N.Y. 1983) (holding that "a party who voluntarily submits to the jurisdiction of a state court by filing a permissive counterclaim thereby waives the right of removal").

In determining whether a party has waived removal, courts tend to focus on the removing party's actions in state court only after it became clear the case was subject to removal. See Guevara v. Delta Air Lines, Inc., No. 21 CV 664, 2021 WL 2548989, at *2 (E.D.N.Y. June 22, 2021) (holding that "courts have tended to limit the [waiver-of-removal] exception" to cases where the defendant's action occurred "*after* it is apparent that the case is removable" (emphasis

in original) (quoting Stemmle v. Interlake Steamship Co., 198 F. Supp. 3d at 166)); see also

Becker v. Lindblom, No. 10 CV 792, 2010 WL 4674305, at *2 (W.D.N.Y. Nov. 18, 2010)

(holding that "[a] defendant may waive the right to remove a state court action to federal court

by taking actions in state court, after it is apparent that the case is removable, that manifest the

defendant's intent (1) to have the case adjudicated in state court and (2) to abandon the right to a

federal forum" and finding no waiver when defendant counterclaimed before plaintiff submitted

computation of $3 million in damages (citation omitted)), report and recommendation adopted,

No. 10 CV 792, 2011 WL 335864 (W.D.N.Y. Jan. 31, 2011).  In Guevara v. Delta Air Lines,

Inc., for example, the court found the defendant did not waive removal even when the defendant

signed a stipulation extending its time to answer and waiving "all jurisdictional defenses"

because the stipulation was not a "claim or motion that would have resulted in an adjudication on

the merits" and the defendant was unaware that the case was removable when it entered into the

stipulation.  2021 WL 2548989, at *2.

     Plaintiff does not claim that defendant took any action in the state court that would

suggest that defendant intended to have the case adjudicated in state court.  Nor has plaintiff

cited to anything that would suggest that defendant intended to abandon its right to a federal

forum.  Instead, plaintiff's waiver argument is based on defendant's actions in the prior federal

ADA action that was previously dismissed.  Plaintiff, however, has cited no authority for the

proposition that a defendant's actions in a prior federal court case constitute a waiver of removal

in a subsequent state case.  Even assuming actions in a prior federal court case could constitute a

waiver, here defendant was not on notice that the claims raised by plaintiff in the instant action

were potentially subject to removal until after that earlier case was dismissed and the instant

Complaint was filed.  Moreover, since plaintiff's prior federal Complaint did not make mention

of the CBA, it is unclear how defendant's failure to raise the issue of preemption could be seen as an "affirmative step[] in state court" that was "inconsistent" with removal in the current action. Stemmle v. Interlake Steamship Co., 198 F. Supp. 3d at 165. This is particularly true because Section 301 preemption is only relevant to determining whether the case belongs in state or federal court and, since the prior action was already pending in federal court, there was no need to raise it. At minimum, litigating a prior, albeit related, case does not constitute the sort of "clear and unequivocal" waiver that courts require. See, e.g., Hanwha Corp. v. Cedar Petrochemicals, Inc., 2010 WL 11713072, at *2.

The Court therefore respectfully recommends a finding that defendant's invocation of removal jurisdiction has not been waived.

B. Whether Adjudication of the Claims Requires Interpretation of the CBA

Turning to the question of preemption, "the starting point in determining whether a claim is preempted by Section 301 is consideration of the elements of plaintiff's stated claim. The court then considers whether adjudication of any element of that claim requires interpretation of the parties' collective bargaining agreement." Zuckerman v. Volume Servs. Am., Inc., 304 F. Supp. 2d 365, 370 (E.D.N.Y. 2004) (citing Foy v. Pratt & Whitney Grp., 127 F.3d at 233); see also Bryant v. Verizon Commc'ns, Inc., 550 F. Supp. 2d 521, 527 (S.D.N.Y. 2008).

Importantly, "when a plaintiff asserts a state law claim that is independent of a collective-bargaining agreement, 'the presence of a federal question, even a § 301 question, in a defensive argument does not . . . transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.'" Rodriguez v. Newmark & Co. Real Est., Inc., No. 19 CV 9607, 2020 WL 3073259, at *3 (S.D.N.Y. June 10, 2020) (quoting Caterpillar, Inc. v. Williams, 482 U.S. at 393); see also Wilds v. United Parcel Serv., Inc., 262 F. Supp. 2d at 180-

81 (rejecting preemption argument where provisions in the collective bargaining agreement were raised as a defensive argument). Even when a defendant "will offer a defense that requires the court to interpret the CBA," removal is unavailable. Rodriguez v. Newmark & Co. Real Est., Inc., 2020 WL 3073259, at *3. Such a defensive argument can even be anticipated and made by plaintiff. See Prudenti v. Daily News, L.P., No. 10 CV 8964, 2011 WL 2899226, at *2 (S.D.N.Y. July 11, 2011) (describing this as "preemptive responses to anticipated affirmative defenses"). Thus, unless plaintiff's *claim* requires interpretation of the CBA,[6] removal is improper, even if reference to or interpretation of the CBA will be made in a defensive argument.

### 1) Plaintiff's Claims Under the NYCHRL and NYSHRL

Plaintiff's Complaint alleges two causes of action: disability discrimination under the NYCHRL and disability discrimination under the NYSHRL. (See Compl. ¶¶ 34-39). There is no separate breach of contract claim based on alleged violations of the CBA.

Although courts in this circuit have "repeatedly come to the conclusion that [NYCHRL, NYSHRL, and other discrimination-based] claims are not preempted by § 301 of the LMRA," each case requires a separate inquiry into the claim and the provisions of the collective bargaining agreement at issue. Wilds v. United Parcel Serv., Inc., 262 F. Supp. 2d at 182. When finding no preemption in these types of cases, courts have often noted that a plaintiff's discrimination claim "turns on the motivation of her employer and not the interpretation of any provision in the collective bargaining agreement." Zuckerman v. Volume Servs. Am., Inc., 304 F. Supp. 2d at 372; see also Curtis v. Airborne Freight Corp., No. 98 CV 4062, 1998 WL

---

[6] Defendant cites to several cases that allegedly stand for the proposition that, when a collective bargaining agreement is *not* referenced, the court will not find preemption. (See Def.'s Opp. at 8-9). However, even where a plaintiff has made specific references to the CBA, courts have found no preemption. See, e.g., Prudenti v. Daily News, L.P., 2011 WL 2899226, at *3. The question is not whether the complaint refers to a CBA, but whether the *claims* require interpretation to the CBA. See Livadas v. Bradshaw, 512 U.S. at 123.

883297, at *6 n.5 (S.D.N.Y. Dec. 17, 1998) (finding no preemption where determination of plaintiff's NYSHRL claim required a "factual inquiry to determine whether defendant engaged in disparate discipline for Caucasians and non-Caucasians, not whether defendant complied with the disciplinary requirements" of the CBA); Lugo v. Milford Mgmt. Corp., 956 F. Supp. 1120, 1127 n.5 (S.D.N.Y. 1997) (finding no preemption even where reference would be made to the "just cause" provision of the CBA because the court must determine the motivation behind plaintiff's termination when plaintiff alleged a violation of the NYSHRL based on disability); Gonzalez v. Dynair Serv. Co., 728 F. Supp. 100, 102 (E.D.N.Y. 1990) (finding no preemption even where reference would be made to the CBA for calculating damages because court was required to determine whether plaintiff was fired in violation of the NYSHRL); International Ass'n of Machinists & Aerospace Workers Loc. Lodge No. 967 v. General Elec. Co., 713 F. Supp. 547, 554 (N.D.N.Y. 1989) (finding no preemption where "causes of action in the complaint have to do with age discrimination rather than the breach" of the CBA).

Looking specifically to plaintiff's claims, in order to establish a prima facie case of disability discrimination under both the NYSHRL and NYCHRL, she must allege the following elements:  (1) she is an individual with a disability within the meaning of the statute; (2) the defendant is subject to the statute and had notice of the disability; (3) the plaintiff was otherwise qualified to perform the essential functions of her position with reasonable accommodation; and (4) the defendant failed to make such accommodation.  See Martinez v. Mount Sinai Hosp., No. 14 CV 2548, 2015 WL 9450624, at *3 (S.D.N.Y. Dec. 22, 2015); Prudenti v. Daily News, L.P., 2011 WL 2899226, at *2 (citing Mohamed v. Marriott Int'l, Inc., 905 F. Supp. 141, 156-57 (S.D.N.Y. 1995)).  Once a plaintiff establishes a prima facie case, the burden shifts and it becomes incumbent upon the defendant to rebut the presumption of discrimination and articulate

a "legitimate, non-discriminatory reason" for its conduct.  <u>Timashpolsky v. State Univ. of New York Health Sci. Ctr. at Brooklyn</u>, 306 A.D.2d 271, 272, 761 N.Y.S.2d 94, 96 (2d Dep't 2003).  If the defendant can articulate a non-discriminatory reason, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the reason provided by defendant was "pretextual."  <u>Id.</u>

As an initial matter, there appears to be no dispute that plaintiff has satisfied her preliminary burden to allege all of the necessary elements to make out a prima facie case.  Indeed, defendant does not appear to challenge the allegations that plaintiff is an individual with a disability and that defendant was not only subject to the statute but also had notice of the disability.  However, defendant contends that in order to adjudicate the issues raised by the third and fourth elements of this test, the court will be required to interpret certain provisions of the CBA.  (Def.'s Opp.[7] at 6 (contending that plaintiff's allegations regarding the CBA "are plainly in support of plaintiff's NYCHRL and NYSHRL claims, i.e., that she could have performed her job with reasonable accommodation and that National Grid failed to make such accommodation")).

The two provisions of the CBA cited by the parties are as follows:[8]

> 1.      In the event an employee shall become unable to perform the employee's normal duties because of a mental or physical disability, the Company will attempt but shall not be required to provide the employee with work.  In any such case, an employee having fifteen (15) years or more of service, but less than twenty (20) years shall not be subject to a reduction in compensation in excess of 10% of the rate of the employee's compensation at the time the disability was incurred.  In any such case, an employee having twenty (20) years or more of service shall not be subject to

---

[7] Citations to "Def.'s Opp." refer to Defendant's Memorandum in Opposition to Plaintiff's Motion to Remand, filed March 9, 2021, ECF No. 14.

[8] The Court notes that neither party has provided any additional citations to the CBA, nor have they provided a complete copy of the CBA.  Thus, the Court is limited in its determination regarding the scope of the CBA.

> any reduction in the rate of the employee's compensation at the time the disability was incurred.  In its attempt to provide such a disabled employee with work, the Company will not confine itself to employment opportunities in a particular area, but will seek to find a place for the employee throughout the Company.

(Compl. at 5 (citing Article XVIII, Section 1)).

> 2.    [P]referred consideration [regarding transfers] will be given to those employees having the necessary qualifications who are senior in service with the Company.

(Id. (citing Article IV, Section 1(b)(2))).

Accordingly, the Court proceeds to analyze whether either of the two disputed elements of plaintiff's claims require interpretation of the aforementioned CBA provisions.

a.   Third Element:  Reasonable Accommodation

The first question is whether an interpretation of the CBA is necessary to determine if plaintiff, with a reasonable accommodation, could have performed the essential functions of her position.  "A reasonable accommodation is one that enables an individual with a disability . . . to perform the essential functions of that position or to enjoy equal benefits and privileges of employment."  Berger v. New York Police Dep't, 304 F. Supp. 3d 360, 369 (S.D.N.Y 2018) (quoting Noll v. International Bus. Mach. Corp., 787 F.3d 89, 94 (2d Cir. 2015)); LaVigna v. State Farm Mut. Auto. Ins. Co., 736 F. Supp. 2d 504, 512 (N.D.N.Y. 2010).  However, an accommodation is not reasonable if it results in "elimination of a function that is essential or fundamental to the job."  Noll v. International Bus. Mach. Corp., 787 F.3d at 94.

Defendant has failed to explain why the Court would need to consult the CBA to determine whether plaintiff could have performed her duties as a CSR with a reasonable accommodation.  Apart from a vague reference to the need to analyze the CBA to determine what the "normal duties" of a CSR were (see Def.'s Opp. at 6), defendant has not explained what

16

provision in the CBA would need to be interpreted in order to determine whether plaintiff could have performed the "essential functions" of her job if provided with any of the accommodations she asked for.[9]  What is considered an "essential function" of plaintiff's job is not established by reference to the CBA, but rather by evidence of her duties as a CSR.

Nor does defendant cite to any CBA provision that this Court would need to interpret to determine whether plaintiff's accommodation requests were reasonable.  Specifically, plaintiff requested several alternative accommodations:  a transfer within the Call Center, a transfer to a clerical position outside of the Call Center, a transfer to a different location, and work from home privileges.  (See Compl. ¶¶ 7, 27).  The question of whether plaintiff could have adequately performed her role as a CSR with any of those requested accommodations can be determined solely by looking at the requirements of each of these accommodations, whether the specific accommodation was reasonable, and whether the accommodations would eliminate an essential or fundamental function of her job.

Defendant does not contend that the CBA specifies or limits available accommodations that could have been considered in response to plaintiff's requests.[10]  Further, defendant has cited no cases that limit the court, or the plaintiff, to potential "accommodations" set forth in a collective bargaining agreement in determining whether a reasonable accommodation could have been provided as required by law.  Indeed, the determination of what is a reasonable accommodation is prescribed entirely by law arising under the NYSHRL and NYCHRL.  Even if the CBA somehow limited the sorts of accommodations available to plaintiff, "clearly § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is

---

[9] It should be noted that defendant has not cited to a specific CBA provision nor has it provided the language of such a provision that defines the essential elements of plaintiff's job title.

[10] Plaintiff cites at least one requested accommodation—working from home—which is mentioned nowhere in the cited CBA provisions.

illegal under state law." Baldracchi v. Pratt & Whitney Aircraft Div., 814 F.2d 102, 105 (2d Cir. 1987) (quoting Allis-Chalmers Corp. v. Luek, 471 U.S. 202, 212 (1985)), cert. denied, 486 U.S. 1054 (1988). As other courts have noted, freedom from discrimination, and therefore access to reasonable accommodations, is a "non-negotiable right." Bryant v. Verizon Commc'ns, Inc., 550 F. Supp. 2d at 529; see also International Ass'n of Machinists & Aerospace Workers Loc. Lodge No. 967 v. General Elec. Co., 713 F. Supp. at 554 (noting plaintiff's NYSHRL claims are "not generally of the sort which may be negotiated away at a bargaining table"). Thus, defendant would have been unable to preclude employees from seeking "reasonable accommodations" under the NYSHRL and NYCHRL through provisions in the CBA.

Therefore, the third element of the plaintiff's claims under the NYSHRL and NYCHRL does not require interpretation of the CBA, but simply requires that the Court assess whether there were reasonable accommodations available that would have allowed plaintiff to perform the essential functions of her job.

b. Fourth Element:  Failure to Accommodate

A disability discrimination claim "based on failure to accommodate is not made out unless the employee's request for a reasonable accommodation has been denied by the employer." Anyan v. New York Life Ins. Co., 192 F. Supp. 2d 228, 247 (S.D.N.Y. 2000) (citing Mazza v. Bratton, 108 F. Supp. 2d 167, 176 (E.D.N.Y. 2000)). Once it has been determined that there was a reasonable accommodation as set out in the third element, disputes regarding whether the defendant denied a reasonable accommodation turn on whether the defendant knew of the request and failed to take action regarding the request. Cf. Lebowitz v. New York City Dep't of Educ., 407 F. Supp. 3d 158, 176 (E.D.N.Y. 2017) (finding no failure where defendants did not know of plaintiff's request for accommodation); Gaughan v. Rubenstein, 261 F. Supp. 3d

390, 406 (S.D.N.Y. 2017) (finding no failure where plaintiff did not allege a request for accommodation); Ayan v. New York Life Ins. Co., 192 F. Supp. 2d at 247 (finding no failure where defendant granted plaintiff an accommodation). Further, both the NYCHRL and the NYSHRL require the employer to "duly consider[] the requested accommodation." Jacobsen v. New York City Health & Hosps. Corp., 22 N.Y.3d 824, 837, 11 N.E.3d 159, 168, 988 N.Y.S.2d 86, 95 (2014). This means that the employer must "show that it engaged in a good faith interactive process that assessed the needs of the disabled individual and the reasonableness of the accommodation requested." Id. (alterations and citations omitted).

Defendant argues that with respect to the fourth element of plaintiff's claim – namely, that defendant failed to engage in the interactive process and failed to consider plaintiff's requests for an accommodation – plaintiff has included in the Complaint "numerous allegations that National Grid violated the terms of the CBA." (Def.'s Opp. at 5). In essence, defendant argues that the fourth element of plaintiff's claim rests on a theory that defendant breached the CBA,[11] and that her state law claims are "substantially dependent on analysis of the CBA." Caterpillar Inc. v. Williams, 482 U.S. at 395. According to defendant, the Court would need to analyze the language of the CBA to determine whether, by failing to provide the requested accommodations, defendant would be in violation of the CBA. (Def.'s Opp. at 6). However, a review of the allegations in the Complaint clearly demonstrates that plaintiff's claims do not rest on alleged violations of the CBA, but rather are predicated on defendant's failure to provide reasonable accommodations as required by the NYSHRL and NYCHRL.

---

[11] Even assuming "that the same conduct which violates the NYCHRL could simultaneously be construed as a violation [of a CBA], that consideration, without more, would not lead to the conclusion that § 301 of the LMRA preempts the NYCHRL claim." Wilds v. United Parcel Serv., Inc., 262 F. Supp. 2d at 181 n.10. As such, even if defendant did violate the CBA, that does not mean that plaintiff's claims of discrimination under the NYCHRL and NYSHRL are preempted.

First, plaintiff alleges that she requested accommodations in 2014, 2015, 2016, and 2017, and that they were all denied.  (Compl. ¶¶ 5-10).  Plaintiff also alleges that defendant did not "engage in an interactive discussion" with her about potential accommodations.  (Id. ¶ 11).  If plaintiff's allegations are true,[12] defendant clearly was aware of plaintiff's requests for an accommodation and not only failed to grant them but did not even discuss the requests with plaintiff as required by state law.

Defendant, however, asserts that "the Complaint alleges that National Grid violated the CBA by failing to adhere to transfer and seniority rules."  (Def.'s Opp. at 5 (citing Compl. ¶ 18)).  Defendant mischaracterizes plaintiff's Complaint.  Plaintiff only says that the CBA does not require "strict seniority" when considering transfers which "gives [defendant] some discretion." (Compl. ¶ 18).  Further, plaintiff states that "seniority is not an impediment to accommodating employees with disabilities."  (Id. ¶ 19).  Lastly, she notes that defendant is "not limited" by the CBA regarding transfers.  (Id. ¶ 20).  As discussed infra, these statements are not allegations of breach, but are rather responses to anticipated defense arguments.

Defendant next points to plaintiff's incorporation into the Complaint of the entirety of Article XVIII, Section 1 of the CBA, arguing that "plaintiff alleges that National Grid failed to fulfill its obligations under the CBA when it did not 'do a job search. . . .'"  (Def.'s Opp. at 5 (quoting Compl. ¶ 21)).  Defendant contends that the CBA would need to be consulted to determine the meaning of "attempt . . . to provide [plaintiff] with work," and what actions constitute "seek[ing] to find a place for the employee throughout the Company."  (Id. at 6). However, plaintiff's reference to this provision of the CBA only illustrates that defendant did not

---

[12] This Court makes no assumptions regarding the truth or falsity of plaintiff's allegations because when addressing a motion to remand, "we need not pass judgment on the merits of the case."  Wilds v. United Parcel Serv., Inc., 262 F. Supp. 2d at 178.

provide her requested accommodations, because defendant "never performed" a job search, never "explore[d] other, less stressful clerical jobs," and never "attempt[ed] to provide plaintiff with work [from home]" privileges before April 2020 when it allowed all CSRs to work from home.  (Compl. ¶¶ 20, 24, 28).  These references are not allegations of breach, but simply claim that defendant failed to take any reasonable steps to accommodate as required by the NYSHRL and NYCHRL.

Lastly, the CBA does not *require* the defendant to provide the accommodations plaintiff requested, and therefore, the defendant cannot be subjected to a claim of breach of contract based on these provisions.  Rather, defendant is required by the NYSHRL and NYCHRL to take certain actions, such as engaging in the interactive process and providing a reasonable accommodation.  Perhaps in an attempt to ensure compliance with the law, the CBA requires the employer, when faced with a request for an accommodation, to "seek to find a place for the employee throughout the Company."  (Compl. ¶ 19).  Although the CBA provides that the employer is "not required to provide the employee with work," the CBA does require the employer to "attempt" to find work for a disabled employee within the company.  (Id.)  While the requirements of the CBA fall short of the NYSHRL and NYCHRL imperative to provide reasonable accommodations, the CBA does not limit defendant's ability to offer other accommodations.  Additionally, as mentioned previously, "[t]he right to be free from such discrimination arises from state law, not from the CBA, and it is a non-negotiable right."  Bryant v. Verizon Commc'ns, Inc., 550 F. Supp. 2d at 529.  As such, whether the defendant violated the NYSHRL or the NYCHRL in denying or failing to consider plaintiff's accommodation requests does not necessitate interpretation of the CBA.[13]

---

[13] Defendant lists several cases where courts have found preemption in "unionized settings."  (See Def.'s Opp. at 7-8).  However, these cases are inapposite.  Some deal with allegations of CBA breaches

### 2) Plaintiff's References to the CBA:  Anticipated Defenses

Plaintiff maintains that the "mentions of the CBA" in her Complaint "are relevant to [defendant's] defenses," and that "[i]n no way does the Complaint assert a claim for violation of the CBA."  (Pl.'s Mot. at 13-14; <u>see also</u> Pl.'s Reply at 2 (asserting that "[t]o the extent the [CBA] is mentioned, it was to demonstrate that the [CBA] was not an impediment" to her requests)).  Indeed, despite defendant's efforts to characterize plaintiff's references to the CBA as raising breach of contract claims, the references actually constitute "preemptive responses to anticipated affirmative defenses."  <u>Prudenti v. Daily News, L.P.</u>, 2011 WL 2899226, at *3.

In <u>Prudenti v. Daily News, L.P.</u> the plaintiff referred to several clauses of the CBA at issue, including the requirement that the employer must provide a pre-termination meeting before terminating an employee and provisions setting out less-severe penalties for conduct like plaintiff's.  <u>Id.</u>  The <u>Prudenti</u> court held that plaintiff's references to these provisions in the CBA were included in the Complaint in response to defendant's anticipated non-discriminatory

---

by a union, where the obligations owed to the union members were governed by the CBA.  Here, however, the obligation owed to plaintiff is governed by New York State and City law.  <u>See, e.g.</u>, <u>Langford v. International Union of Operating Eng'rs, Loc. 15</u>, 765 F. Supp. 2d at 506-07; <u>Greco v. Communications Workers of Am., Local 1104</u>, 824 F. Supp. 2d 351, 356 (E.D.N.Y. 2011); <u>Langford v. International Union of Operating Eng'rs, Loc. 15, 15A, 15B, 15C, 15D, & 15H</u>, No. 18 CV 4669, 2019 WL 1492910, at *3 (E.D.N.Y. Mar. 31, 2019); <u>Whitehurst v. Staten Island Univ. Hosp.</u>, 928 F.3d 201, 208 (2d Cir. 2019).  Other cases cited by defendant dealt with wrongful terminations that required the courts to interpret "just cause" or seniority CBA provisions to determine whether the action taken was allowed under the CBA, but as discussed, this case requires the Court only to determine whether a reasonable accommodation was available and not provided.  <u>See, e.g.</u>, <u>Zahler v. Empire Merchs., LLC</u>, 11 CV 3163, 2012 WL 273698, at *12-13 (E.D.N.Y. Jan. 31, 2012); <u>Morrissey v. Verizon Commc'ns, Inc.</u>, No. 10 CV 6115, 2011 WL 2671742, at *4 (S.D.N.Y. July 7, 2011).  Still others were premised on breach of contract claims against the employer.  <u>See</u> <u>Heaning v. NYNEX-New York</u>, 945 F. Supp. 640, 645-47 (S.D.N.Y. 1996); <u>Allocco v. Dow Jones & Co., Inc.</u>, No. 02 CV 1029, 2002 WL 1402084, at *4-5 (S.D.N.Y. June 27, 2002).  Again, despite defendant's attempts to characterize the plaintiff's claims as raising a breach of contractual duty, the Complaint rests on violations of the NYSHRL and NYCHRL and the Court need only look to whether a reasonable accommodation could, and should, have been provided in accordance with those laws.  Lastly, defendant cites to a case that found preemption where the plaintiff's claim alleged that the CBA provision was illegal, which is clearly inapplicable to the facts of this case.  <u>Vera v. Saks & Co.</u>, 335 F.3d 109, 115-16 (2d Cir. 2003).

reasons for plaintiff's termination, and hence were "preemptive responses" or anticipatory counterarguments on plaintiff's part.  Id. at *5.  This meant that an interpretation of the CBA was not required and therefore the court found that the state law claims were not subject to preemption under Section 301.  Id.

As in Prudenti, the referenced CBA provisions in this case serve solely as a response to defendant's anticipated defenses in the matter.  To the extent that plaintiff's Complaint refers to the CBA, plaintiff merely alleges that the CBA is not "an impediment" to any of the accommodations she requested, nor was defendant "limited" by the CBA in accommodating her.  (Compl. ¶¶ 19-20).  In effect, plaintiff argues that she provided several suggestions for accommodations, none of which are prohibited under the CBA.  As such, plaintiff's citations to the CBA assume that defendant may contend that plaintiff's requests for these accommodations would violate the CBA.[14]  For example, plaintiff cites the CBA provision that an employer "will not confine itself to employment opportunities in a particular area, but will seek to find a place for the employee throughout the Company," in an attempt to foreclose any defense that the CBA limited the defendant in any way from attempting to find her a position that she could perform.  (Id. at 19).

Similarly, plaintiff's reference to the provision in the CBA regarding "preferred consideration" based on seniority for transfers is cited to show that her requests for accommodations were not prohibited by the CBA, an argument that defendant could make regarding the reasonableness of her accommodation requests.  (Id. ¶ 18).  Although plaintiff does

---

[14] Although it is unclear from the briefing, the provisions could also serve as evidence that defendant provided a reasonable accommodation if the defendant can show that it complied with the provisions.  This also assumes that a mere "attempt" to find another position for plaintiff is a "reasonable accommodation" under the NYSHRL and NYCHRL.  Although this may necessitate interpretation of the CBA, this is still a potential defense and therefore is an insufficient basis for removal.  See Rodriguez v. Newmark & Co. Real Est., Inc., 2020 WL 3073259, at *3.

reference *her* seniority when stating that she would "suffer <u>no</u> loss of pay if she were accommodated by placement in a lower paying job," this reference does not require any interpretation of the CBA's seniority provision.  (<u>Id.</u> ¶ 20 (emphasis in original)).  Rather, this reference is again a response to defendant's anticipated defense that it would be unable to find plaintiff an equal paying job elsewhere in the company and, therefore, such an accommodation would be unreasonable.  Plaintiff merely argues that she could be adequately accommodated with placement in a lower paying job.  As with the reference to the provision directing defendant to look for work throughout the company, plaintiff's reference to the seniority provisions in the CBA is a preemptive or anticipatory response to potential defenses that could be raised by defendant; however, there is no need to interpret either of these provisions in order to adjudicate plaintiff's state law claims, and thus preemption is not required.

As the <u>Wilds</u> court stated, and this Court agrees, "[w]e see no reason why a plaintiff should be forced to raise [breach of contract] claims in a lawsuit where [s]he voluntarily and openly concedes that those claims are not included in [her] action."  <u>Wilds v. United Parcel Serv., Inc.</u>, 262 F. Supp. 2d at 177.

The Court therefore respectfully recommends a finding that plaintiff's claims do not require interpretation of the CBA and preemption under Section 301 does not apply.  Accordingly, the Court recommends a finding that removal was improper and that plaintiff's motion for remand be granted.

<u>CONCLUSION</u>

The Court respectfully recommends that the case be remanded to state court.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.

24

Failure to file objections within the specified time waives the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.


**SO ORDERED.**


Dated: September 3, 2021
         Brooklyn, New York

*Cheryl L. Pollak*
CHERYL L. POLLAK
United States Magistrate Judge
Eastern District of New York